THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDON AUSTILL, <br><br> v. <br><br> JOSEPH TERRA, et al. | CIVIL ACTION <br><br> No. 25-0238 |

Henry, J. s/CH June 25, 2025

### MEMORANDUM

Plaintiff Brandon Austill, a convicted prisoner currently incarcerated at SCI Albion, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of her constitutional rights arising from events that occurred while she was housed at SCI Phoenix. Currently before me is Austill's complaint, in which she asserts claims against the following individuals, all of whom are alleged to be SCI Phoenix employees: Superintendent Joseph Terra, PREA[1] Coordinator Jolene Sokolski, Grievance Coordinator/Correctional Superintendent Assistant Kristina Owens, Correctional Officer Nash, Grievance Officer Lieutenant Patterson, Unit Manager Olivieri, and Counselor Lommel. Compl. 2–4. Austill asserts both individual and official capacity claims against the defendants. *Id.* at 2–4, 5. For the following reasons, I dismiss Austill's claims for prospective injunctive relief as moot. I dismiss her official capacity claims seeking money damages and her claims against defendant Owens with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Austill's claims against Terra, her Eighth Amendment deliberate indifference claim, and her Fourteenth Amendment equal protection claim I dismiss without prejudice pursuant to 28 U.S.C.

---

[1] I understand this acronym to refer to the "Prison Rape Elimination Act."

1

§ 1915(e)(2)(B)(ii). Austill will be permitted to proceed with her Eighth Amendment failure to protect claim against Terra, Sokolski, Nash, Patterson, Olivieri, and Lommel. I also grant Austill the option of either proceeding at this time on only the claims that survive statutory screening or filing an amended complaint to attempt to cure the defects discussed herein.

I. **BACKGROUND**[2]

The gravamen of Austill's claim is that the named defendants did not prevent her cellmate from raping her, and that following the rape, she was denied medical and psychiatric care, falsely accused of being the rapist, and prevented from reporting the rape. Austill, who is transgender,[3] alleges that she was raped at SCI Phoenix prior to the events described in her complaint.[4] Compl. 7. She alleges that at some point, defendant Nash moved her into a cell with Swanger, the alleged rapist, to accommodate one of Nash's "inmate companions." *Id.* Fearing that Swanger would victimize her, Austill unsuccessfully requested that defendant Patterson place her in a single cell. *Id.* She made the same request to defendant Sokolski on three occasions, and, several days before the alleged rape, advised Sokolski that Swanger had grabbed her breasts. *Id.* On November 6, 2024,

---

[2] The factual allegations set forth in this Memorandum are taken from Austill's complaint. The Court adopts the pagination supplied by the CM/ECF docketing system. Where appropriate, typographical errors are corrected for clarity.

[3] In her Motion for Preliminary Injunction, filed contemporaneously with her complaint, Austill states that she is transgender and alleges that SCI Phoenix personnel charged with protecting her instead facilitated her rape. Plaintiff's Motion for Preliminary Injunction ("PI Mot."), ECF 4 at 2. That motion., which sought transfer to a different correctional institution, was denied as moot when Austill submitted a Notice of Change of Address indicating that she had been transferred to SCI Albion. *See* ECF 8.

[4] Although she does not state when, where, or by whom she was raped, the Court understands Austill to be alleging that the incident occurred at SCI Phoenix. *See* compl. at 7 ("I was told the same thing right before I was raped the last time — 'Deal with it.'"). It is not clear whether the defendants named in the complaint were aware of the earlier rape at the time it occurred, or whether they were told about it prior to the events described in the complaint.

Austill told defendants Nash and Olivieri that if Swanger touched her again, there would be trouble. *Id.* In response, defendants threatened Austill with placement on the RHU[5] and told her "Deal with it." *Id.* Austill also requested that defendants Nash and Olivieri remove Swanger from their shared cell, with no success. *Id.* Austill also visited defendant Lommel's office on multiple occasions to describe the difficulties she was facing with Swanger, but Lommel allegedly refused to report Swanger's predatory behavior. *Id.* Defendant Terra, too, was "made aware" of the events described but refused to act, though he is empowered to make decisions regarding single-cell placement. *Id.*

Austill alleges that on November 8, 2024, while in their cell, she allowed Swanger to share her electronic cigarette. *Id.* When Swanger returned the device and Austill used it, she experienced seizure-like symptoms. *Id.* Swanger, laughing, then took the device back and remarked, "One of us is getting fucked tonight, and I don't care who." *Id.* While Austill remained unable to move on her own, Swanger removed Austill's pants and unsuccessfully attempted to roll her onto her stomach. *Id.* He then forced Austill to engage in oral sex. *Id.* Austill alleges she was able to secure a sample of Swanger's semen, which she hid in a piece of toilet paper behind her bed. *Id.* The next morning, Swanger grabbed Austill's genitals, whereupon Austill "choked him out." *Id.* When Swanger regained consciousness, he remarked to Austill that he thought Austill "liked it," and Austill responded, "You fucking raped me!" *Id.*

Later that morning, Swanger saw the semen sample Austill had hidden. *Id.* The next day, Swanger filed a false PREA report asserting that Austill had been the attacker, and Austill was removed to the RHU. *Id.* Austill alleges that for two days, she was prevented from reporting her own rape and was instead questioned by Lieutenant Patterson and an unidentified outside

---

[5] I understand this acronym to refer to a Restricted Housing Unit.

psychiatrist. *Id.* Once she was able to report the rape and provide the DNA sample she collected, she was allegedly asked why she did not fight Swanger off and was threatened with unidentified charges. *Id.*

Austill attempted to file a grievance following the rape, but defendant Owens allegedly prevented her from doing so, and attempted to cover up the conduct of SCI Phoenix employees who had contact with Austill both before and after the rape. *Id.* Austill's unidentified counselor has unsuccessfully tried to act on her behalf, including contacting the PREA Coordinators at SCI Phoenix and at the Central Office of the Department of Corrections. *Id.* Austill alleges that she was provided no prophylactic treatment to prevent disease following the rape at issue in this case and was not offered supportive psychological services as required under PREA. *Id.*

Austill asserts claims for violations of her Eighth and Fourteenth Amendment rights. Compl. 3. As relief, she seeks a declaratory judgment,[6] preliminary and permanent injunctive relief,[7] and money damages. *Id.* at 6.

---

[6] Declaratory relief is unavailable to adjudicate past conduct, so Austill's request for that relief will not be granted. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, 855 Fed.Appx. 812, 815 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

[7] As noted, I already denied Austill's request for preliminary injunctive relief in light of her transfer to a different facility. ECF 8.

## II. LEGAL FRAMEWORK

I previously granted Austill leave to proceed *in forma pauperis* because it appeared that she was incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, I accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Austill is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

Austill asserts claims based on alleged violations of her constitutional rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in

5

a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *accord Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

### A. Official Capacity Claims

Austill asserts official capacity claims against the defendants. Compl. 2–4. Official capacity claims are indistinguishable from claims against the governmental entity that employs the defendants. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (Such suits "generally represent only another way of pleading an action against an entity of which an officer is an agent.") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). Thus, Section 1983 claims against the individual defendants here, all of whom appear to be employed by the DOC, compl. at 2–4, are really claims against the Commonwealth, which is shielded from Section 1983 suits by Eleventh Amendment immunity and is not considered a "person" subject to liability under Section 1983. *See also Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 309–10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of Section 1983). Accordingly, Austill's claims for money damages against the defendants in their

official capacities will be dismissed with prejudice. I address Austill's claims against the defendants in their individual capacities below.

### B. Claims Against Defendant Owens

Austill asserts claims against Grievance Coordinator/Correctional Superintendent Assistant Kristina Owens. Owens is referred to once in the complaint: Austill alleges that Owens violated PREA by making it impossible for her to file a grievance following her rape and has attempted to cover up the conduct of SCI Phoenix employees involved in the events described. Compl. 7. For the following reasons, Austill's claims against Owens are not plausible and will be dismissed with prejudice.

First, I understand Austill to be asserting a claim against Owens for interfering with her ability to file a grievance. However, claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001); *accord Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)). Because Austill has no constitutional right to a grievance procedure, it follows that no constitutional claim can be based on a prison official's interference with the grievance process. *See, e.g.*, *Rosado v. Virgil*, No. 09-156, 2011 WL 4527067, at *9 (W.D. Pa. Sept. 28, 2011) (since prisoners have no constitutional right to a grievance process, placing a prisoner on grievance restriction does not independently violate the constitution). Thus,

7

Owens's interference with Austill's ability to file a grievance does not give rise to a plausible claim.

Next, Austill may also be asserting a claim against Owens arising from alleged violations of the PREA. However, "while the Prison Rape Elimination Act was intended in part to increase the accountability of prison officials and to protect the Eighth Amendment rights of Federal, State, and local prisoners, nothing in the language of the statute establishes a private right of action." *See Walsh v. N.J. Dep't of Corr.*, No. 17-2442, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017) (cleaned up); *see also Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015) (noting that "other courts addressing ther issue have found that the PREA does not establish a private cause of action"); *Frederick v. Snyder Cnty. Prison*, No. 18-707, 2019 WL 1348436, at *4 (M.D. Pa. Mar. 22, 2019) (same). Thus, Austill cannot "bring a private action to enforce obligations set forth in the PREA, whether through the statute itself or through [an] attempt to enforce the [institution's] PREA policy via section 1983." *See Bowens v. Emps. of the Dep't of Corr.*, No. 14-2689, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016), *aff'd, Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017). Although Austill refers to her outside advocate having contacted the PREA Coordinator at SCI Phoenix and the Department of Corrections Central Office, compl. 7, it is not clear that she ever filed a PREA complaint. To the extent that she did and now challenges the quality of the investigation into her PREA complaint, she has no freestanding right to such an investigation. *See Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (stating that "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient

to sustain a section 1983 claim."). Accordingly, any claims premised upon violations of the PREA must be dismissed as a matter of law.

### C.  Failure to Protect Claims

I understand Austill to be asserting that defendants Patterson, Sokolski, Nash, Olivieri, Lommel, and Terra violated her Eighth Amendment rights when, despite her requests for protection, they failed to prevent Swanger's attack.[8] (*See* Compl. at 7.) The Eighth Amendment, made applicable to the individual states through the Fourteenth Amendment, prohibits states from inflicting "cruel and unusual punishments" on those convicted of crimes. *See Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and must take reasonable measures to guarantee the safety of the inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (cleaned up). Courts have found that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotations omitted). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes*, 452 U.S. at 347).

In a failure to protect claim against a prison official, a plaintiff must allege that: (1) the conditions in which she was incarcerated posed a substantial risk of serious harm; (2) the prison official acted with deliberate indifference to that substantial risk of serious harm; and (3) the

---

[8] The Eighth Amendment's "cruel and unusual punishments" clause applies when an inmate has been convicted of and sentenced for her crimes. *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020). Austill indicates that she is a convicted and sentenced state prisoner. Compl. 5. Therefore, the Eighth Amendment governs her claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

official's deliberate indifference caused harm. *See Farmer*, 511 U.S. at 834; *see also Travillion v. Wetzel*, 765 F. App'x 785, 790 (3d Cir. 2019) (*per curiam*). Deliberate indifference in the context of a failure to protect claim is a subjective standard that requires the plaintiff to allege plausibly that the defendant prison officials "must actually [have been] aware of the existence of the excessive risk; it is not sufficient that [prison officials] should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). "However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Id.* (citing *Farmer*, 511 U.S. at 844).

Austill alleges that after Nash placed her in a cell with Swanger, she asked both Patterson and Sokolski to place her in a single cell because she was afraid of being victimized. Compl 7. She also reported to Sokolski that Swanger had already grabbed her breasts. *Id.* Austill told defendants Nash and Olivieri that if Swanger touched her again, there would be trouble, and requested that they removed Swanger from their cell. *Id.* Instead of doing so, these defendants threatened Austill with placement on the RHU and told her to "Deal with it." *Id.* Austill also told Lommel on multiple occasions about difficulties she was facing with Swanger, but Lommel would not report Swanger's behavior. *Id.* These allegations support a plausible inference that these defendants were aware of a risk to Austill's safety from Swanger, as well as a plausible inference that they were deliberately indifferent to this risk when they refused to either place Austill in a single cell or remove Swanger from the cell he shared with Austill. These claims will be served for a responsive pleading.

With respect to defendant Terra, Austill alleges only that he was "made aware" of the events described but refused to act, though he is empowered to make decisions regarding single-cell placement. *Id.* She does not describe how Terra was made aware of the events described or

10

the nature of any request for assistance he received. Specifically, though she alleges that she personally spoke to each of the other defendants regarding the risk that Swanger posed, Austill does not allege that she spoke to Terra personally or personally requested protection. The conclusory facts alleged are simply not sufficient to state a plausible claim against Terra. Austill has "not nudged [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)). Austill's claim against Terra will be dismissed, and she will be granted leave to amend.[9]

### D. Deliberate Indifference Claims

Austill alleges that following the rape, she was not provided prophylactic treatment to prevent disease or psychiatric support. Compl. 7. I construe this as an Eighth Amendment claim

---

[9] Austill may also be asserting claims against Terra based on the supervisory nature of his position as Superintendent at SCI Phoenix. As pleaded, however, this claim cannot survive. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Chavarriaga*, 806 F.3d at 227. "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316.
  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

for deliberate indifference to Austill's serious medical needs. However, as pleaded, the claim cannot survive, because Austill does not allege that any of the named defendants denied her medical care.

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Austill does not allege that any of the named defendants knew of and disregarded her need for medical care following the rape. In the absence of factual allegations establishing these elements, this claim must be dismissed. Austill will be permitted to amend this claim against the

---

Austill does not adequately allege that Terra was personally involved in the decisions that resulted in her rape, nor does she allege that Terra established a policy or practice that resulted in the rape. She also does not identify a policy or practice that Terra failed to implement. Accordingly, Austill has not stated a claim against Terra based on his supervisory role. To the extent that Austill's claim against Terra is based on his role as Superintendent, it is dismissed without prejudice. Austill will be granted leave to amend this claim.

named defendants or against other individuals who were personally involved in the medical treatment decisions described.

### E. Equal Protection Claims

Austill alleges that she filed a grievance based on the events described in her complaint in which she asserted Eighth and Fourteenth Amendment violations and transgender discrimination. Compl. 9. Additionally, in her Notice of Interlocutory Appeal, she alleges that notwithstanding her transfer to a different correctional facility, she is still subject to victimization and discrimination because she is a transgender woman and goes so far as to state that "anyone else in a like position would have been immediately given a single cell." ECF 11 at 1. I understand Austill to be asserting a Fourteenth Amendment equal protection claim against the named defendants in her complaint. However, as pleaded, a claim under the Equal Protection Clause is not plausible, because the complaint does not include any factual allegations suggesting that the named defendants acted with an intent or purpose to discriminate against her.

In order to state an equal protection violation, Austill must allege "that [she] was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on [her] membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). Austill's complaint does not allege that the defendants' failure to house her in a single cell was the result of intentional discrimination based on her transgender status. I am constrained to rule that the claim is undeveloped at this point as a matter of law. *See Jones v. Sposato*, 783 F. App'x 214, 217 (3d Cir. 2019) (*per curiam*) (general allegations that plaintiff was treated "less favorably" are not sufficient); *Glenn v. Little*, No. 23-3294, 2023 WL 8357944, at *8 (E.D. Pa. Dec. 1, 2023) (dismissing transgender inmate's equal protection claim as not plausible

where allegations of discrimination were purely conclusory); *Harris v. Centurion*, No. 21-739, 2021 WL 5177431, at *4 (D. Del. Nov. 8, 2021) (dismissing as frivolous inmate's equal protection claim because allegations were conclusory and inmate could not state a plausible equal protection claim). Accordingly, I dismiss Austill's equal protection claims without prejudice. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (explaining that "a complaint must do more than allege the plaintiff's entitlement to relief," rather, "[a] complaint has to 'show' such an entitlement with its facts."). Austill's equal protection claim will be dismissed, and she will be granted leave to amend the claim.

## IV. **CONCLUSION**

For the foregoing reasons, I dismiss Austill's claims for prospective injunctive relief as moot. I dismiss the official capacity claims seeking money damages and the claims against defendant Owens with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The claims against Terra, the Eighth Amendment deliberate indifference claim, and the Fourteenth Amendment equal protection claim I dismiss without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Austill may proceed with her Eighth Amendment failure to protect claims against Sokolski, Nash, Patterson, Olivieri, and Lommel. Finally, I grant Austill the option of either proceeding at this time on only the claims that survive statutory screening or filing an amended complaint to attempt to cure the defects discussed herein.